# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JAYSON WEAVER,<br>Defendant. | Case No. 1:20-cr-00238-JLT-SAB-13<br>ORDER DENYING MOTION FOR DISCOVERY WITH PREJUDICE<br>(ECF No. 2148) |

Pending before the Court is third party Lawrence Brown's ("Brown") motion for discovery, seeking to intervene and an order modifying the protective order in this criminal matter to permit enforcement of a civil subpoena. (ECF No. 2148.) The motion has been fully briefed (ECF Nos. 2156, 2160, 2165), and on August 5, 2026, the Court held a hearing on the matter. (ECF No. 2205.) Justin Gilio, Esq., appeared on behalf of the Government. Randy Pollock, Esq., appeared on behalf of Defendant Jayson Weaver, who was also present in person. Benjamin Pavone, counsel for Brown, failed to appear. Upon consideration of the papers and the Court's file, the Court will deny the motion for discovery, and because Mr. Pavone failed to appear, the Court will deny with prejudice.

## I.

## RELEVANT BACKGROUND

In this criminal matter, on July 10, 2025, a fourth superseding indictment was filed charging Defendant Jayson Weaver ("Defendant") with one count of conspiracy to participate in

racketeering enterprise, 18 U.S.C. § 1962; two counts of murder in aid of racketeering, 18 U.S.C. § 1959(a)(1); and one count of conspiracy to commit murder in aid of racketeering. (ECF No. 1970.) As relevant here, on April 11, 2024, and November 14, 2024, the Court entered in stipulated protective orders. (ECF Nos. 1035, 1389.)

Meanwhile, in the Northern District of California, on June 5, 2025, Plaintiff Brown brought a § 1983 putative class action against, *inter alia*, California Department of Corrections & Rehabilitation ("CDCR"). Brown v. California Department of Corrections & Rehabilitation, No. 4:25-cv-04741-JST-AGT, Complaint, ECF No. 1 (N.D. Cal. June 5, 2025). Essentially, the facts underlying the Brown lawsuit involved an alleged event on July 20, 2020, where 50 guards purportedly executed a 3:00 a.m. raid with the intent of injuring and humiliating 100 sleeping African American inmates. Id. at ¶ 1. In addition, Brown alleged that CDCR agents intentionally exposed these inmates to the Covid-19 virus, leading to over 2,700 cases of traceable infection. Id. at ¶¶ 2, 4.

On July 6, 2026, Brown filed the instant motion for discovery and to intervene in this criminal proceeding. (ECF No. 2148.) According to Brown, in 2015, CDCR released Hugo Pinell, a member of the Black Guerrilla Family, into the general Folsom population. (Id. at p. 3.) Brown states that "Aryan Brotherhood members Jayson Weaver and Waylon Pitchford were able to (allegedly) murder him." (Id.) Brown explains that five years later, on July 13, 2020, an African American inmate named Michael Harris stabbed a Folsom guard named Zachary Lujan, with no apparent motive for the attack. (Id.) Seven days later the July 20, 2020 raid occurred, the underlying event for Brown's civil lawsuit. (Id. at p. 4.)

According to Brown, CDCR claimed that the July 20, 2020 raid was a preemptive response to a planned attack by Black Guerrilla Family against the Aryan Brotherhood in retaliation of the 2015 murder of Pinell. (Id.) Brown questions this characterization by CDCR and seeks discovery in order to understand the stabbing of Lujan, which in Brown's view either would support CDCR's position or dispel it completely. (Id. at pp. 4-7.)

/ / /

/ / /

On June 6, 2026, Brown subpoenaed Defendant's counsel with a request for documents:

> REQUEST FOR DOCUMENTS #1. Please produce all DOCUMENTS (as defined in paragraph 15) RELATED (as defined in paragraph 20) to the murder of Hugo Pinell, which occurred on August 12, 2015, in your possession, including but not limited to, any witness statements, incident reports, or other items reflecting any participants in the transaction. Such items, if designated as confidential, will be subject to a protective order governing same.

(ECF No. 2148-2, p. 171.)

Following being served, Defendant's counsel and Brown engaged in an email exchange where Defendant's counsel explained that she and her client were subject to protective orders in this criminal proceeding, and therefore, she could not provide any documents. (Id. at pp. 175-192.) Brown thereafter reviewed the protective orders in this criminal proceeding and noted that he would be filing a motion for discovery and to intervene. (Id. at p. 192.)

## II.

## LEGAL STANDARD

To begin, though perhaps obvious, this is a criminal matter and is therefore governed by, in part, the Federal Rules of Criminal Procedure. Fed. R. Crim. P. 1(a)(1) ("These rules govern the procedure in all criminal proceedings in the United States district courts, the United States courts of appeals, and the Supreme Court of the United States."). While the Federal Rules of Civil Procedure explicitly allow for third-party intervention, Fed. R. Civ. P. 24, the Federal Rules of Criminal Procedure contain no analogous provision. See United States v. Loughner, 807 F. Supp. 2d 828, 830 (D. Ariz. 2011), citing United States v. Aref, 533 F.3d 72, 81 (2d Cir. 2008) and United States v. Blagojevich, 612 F.3d 558, 559 (7th Cir. 2010). Because the Federal Rules of Criminal Procedure control over this proceeding, Fed. R. Crim. P. 1(a)(1), it does not appear that there is a mechanism within the Rules that allow for intervention.[1]

---

[1] Even under Federal Rule of Civil Procedure 24, what the Brown seeks in not intervention. Intervention is a procedural method for a third-party to enter an already existing action in order to protect the third-party's interest in that action. See Amendments to Rules of Civil Procedure, 39 F.R.D. 69, 109-11 (1966) (Advisory Committee Notes to Rule 24 stating that Rule 24 enables applicant to protect interest in action); 6 E. Brunet & J. Smith, MOORE'S FEDERAL PRACTICE - Civil Chapter 24 (2026) (noting that purpose of Rule 24 is to enable person to protect interest in action). Instead of joining this proceeding in order to protect an interest in *this* action, Brown, in reality, is attempting to employ a one-time extraction of criminal discovery from Defendant. Thus, even the purpose underlying Federal Rule of Civil Procedure 24 seemingly runs counter to Brown's position.

Notwithstanding, courts have held that other constitutional rights (*e.g.*, freedom of press and access to open courts) may provide a limited right of intervention in a criminal case involving disputes over court records and proceedings. See Loughner, 807 F. Supp. 2d at 831 (collecting cases). This line of cases is generally within the realm of the press seeking intervention and "can be read, collectively, to support a limited right that only attaches when court proceedings, and materials that are either filed or lodged with the court, are at issue." Id.

## III.

## DISCUSSION AND ANALYSIS[2]

First, Brown argues that he has authority to intervene in this criminal proceeding in order to seek modification of the protective orders[3] in this criminal proceeding. (ECF Nos. 2148, 2165.) Second, Brown contends that the Court should modify the protective order to allow enforcement of the subpoena in Brown action. (Id.) The Government and Defendant oppose (ECF Nos. 2156, 2160), arguing that there is no basis for Brown to intervene, and even assuming Brown could intervene, the Government argues that Brown has demonstrated neither good cause to modify the protective order or a right to discovery produced in this criminal proceeding. (ECF No. 2160.)

### A. Right of Intervention

Brown argues that he has a right of intervention in this criminal proceeding for three reasons. First, Brown argues that any citizen can intervene in a criminal proceeding based on First Amendment rights. Second, Brown contends that the protective orders themselves in this criminal proceeding allow for intervention. Third, Brown argues that he has "plenary authority

---

[2] Before reaching the substantive arguments, the Court must address a significant issue in terms of the briefing. In the motion for discovery, Brown's only cited authority for intervening was Federal Rule of Civil Procedure 24. (See ECF No. 2148-1.) The Court observers that the Government nevertheless took Brown's motion seriously and fully briefed (with substantial discussion on precedent) the issues of intervention, the issue of modification of protective orders, as well as whether Brown has a right to discovery produced in this criminal proceeding. (ECF No. 2160.) Only in his reply did Brown even begin to suggest his bases for intervention and relief sought. (ECF No. 2165.) Yet, even then, instead of engaging with these issues fully, Brown merely cites to caselaw in footnotes without explanation as to why or how these cases support any right to intervene as Brown conceptualizes it. (Id. at p. 5.) That Brown waited until his reply to even begin to engage in the substance of these issues is not well-taken, in particular because neither the Government nor Defendant had an opportunity to respond.

[3] The parties agree that relevant protective orders in this matter were entered by the Court on April 11, 2024, and November 14, 2024. (ECF Nos. 1035, 1389.)

under his own discovery rights to seek information from any source, even if it is 'privileged' or 'protected,' or it is characterized as 'criminal discovery.'" (ECF No. 2165, p. 5.) Though Brown's first argument has some merit, the remaining two arguments are less than persuasive.

To start with, Brown agrees that "Federal Rules of Civil Procedure, Rule 24, does not establish a right of intervention in a criminal case and it is also true that there is no formal criminal rule that comparably provides for third-party intervention." (Id. at p. 4.) While Brown does cite to a limited circumstance where courts have allowed for intervention by third parties into criminal proceedings, it is not as broad as Brown suggests.

As mentioned in the legal standard above, the contours of intervention in a criminal proceeding based on First Amendment rights remains fuzzy. Likely, this is so because this is an area of the law where criminal rights are at times in tension with the First Amendment. The district court in Loughner conducted a thoughtful survey on the matter: "What's clear, based on the Court's survey of the case law, is that the seminal cases addressing the interests of the public and the press in a criminal case involve disputes over court records and proceedings." 807 F. Supp. 2d at 831, citing Press-Enterprise Co. v. Superior Court of California, 478 U.S. 1, 3-4 (1986) (closure of preliminary hearing in criminal prosecution); Press-Enterprise Co. v. Superior Court of California, 464 U.S. 501, 503 (1984) (closure of voir dire proceedings); Globe Newspaper Co. v. Superior Court for Norfolk County, 457 U.S. 596, 599, (1982) (closure of criminal trial to general public and press); Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555 (1980) (exclusion of public and press from criminal trial); Gannett Co., Inc. v. DePasquale, 443 U.S. 368 (1979) (exclusion of public and press from pretrial suppression hearing in a murder case); Nixon v. Warner Communications, Inc., 435 U.S. 589, 591 (1978) (release of tape recordings admitted into evidence); In re Copley Press, Inc., 518 F.3d 1022 (9th Cir. 2008) (sealing of plea agreement and plea colloquy transcript); Phoenix Newspapers, Inc. v. U.S. Dist. Court for Dist. of Arizona, 156 F.3d 940, 943-44 (9th Cir. 1998) (closure of, and sealing transcripts of, hearing conducted during jury deliberations concerning threats to jurors); Oregonian Pub. Co. v. U.S. Dist. Court of Dist. of Oregon, 920 F.2d 1462, 1463 (9th Cir. 1990) (sealing of plea agreement); Times Mirror Co. v. United States, 873 F.2d 1210, 1211 (9th Cir.

1989) (sealing of search warrants, supporting affidavits, and inventories); Seattle Times Co. v. U.S. Dist. Court for Western Dist. of Washington, 845 F.2d 1513, 1514 (access to documents filed under seal in criminal case); United States v. Brooklier, 685 F.2d 1162, 1166 (9th Cir. 1982) (closure of voir dire proceedings and evidentiary hearing); Sacramento Bee v. U.S. Dist. Court for the Eastern Dist. of California, 656 F.2d at 479 (exclusion of press from criminal trial).

The Loughner court then concluded that "[t]o the extent these cases imply, or even recognize, a right on the part of the press to intervene in a case, they can be read, collectively, to support a limited right that only attaches when court proceedings, and materials that are either filed or lodged with the court, are at issue." The Court agrees.

Brown patently seeks discovery that is not filed or lodged on the Court's docket. Moreover, Brown has provided no authority that First Amendment rights could be invoked by "any citizen" for the purposes of intervening into a criminal proceeding seeking *discovery* not filed or lodged on the Court's docket. Accordingly, the Court finds Brown has not demonstrated that this is a sufficient basis for intervention.

Second, Brown attempts to rely on two provisions from the relevant protective orders, which the Court quotes below:

> 35. Nothing in this Order shall prevent any party from seeking modification to the Order or from objecting to discovery it otherwise believes to be improper. Nothing in this Order shall prevent any party from seeking a more restrictive protective order with regard to particular discovery items.
>
> 22. Defense Counsel shall advise the United States with reasonable notice of any subpoenas, document requests, or claims for access to the Protected Materials by third parties if Defense Counsel is considering disseminating any of the Protected Materials to a third party, in order that the United States may take action to resist or comply with such demands as it may deem appropriate.

(ECF No. 1035, ¶¶ 22, 35; see ECF No. 1389, ¶¶ 20, 30.)

Brown contends that the term "any party" from ¶ 35 of the protective order would mean any party in any case, civil or criminal, in apparently any legal proceeding in any jurisdiction. The Court disagrees. Context matters. This is a stipulated protective order between nine defendants and the Government (*i.e.*, the parties to this action). Thus, "any party," in context,

clearly means any party subject to the stipulated protective order. This understanding is only confirmed by the second sentence of ¶ 35, which states 'any party' may seek a more restrictive protective order to particular discovery items. It strains credulity that this sentence would mean, as Brown suggests, that any party in any other jurisdiction might be able to seek a more restrictive protective order in this criminal proceeding. In other words, taken to its logical conclusion, Brown's interpretation makes little sense.

Brown's reliance on ¶ 22 fares no better. Though Brown's observation that ¶ 22 contemplates that a third party might subpoena a criminal defendant for documents, ¶ 22 merely directs defense counsel to inform the Government so that it might object if "Defense Counsel is considering disseminating any of the Protected Materials . . ." Thus, to Brown's observation the Court is left asking, "So what?" This paragraph simply recognizes that a defendant might be subject to a subpoena and requires the defendant to give notice to the Government should he or she consider complying with the subpoena. Paragraph 20 speaks nothing on the issue of intervention or enforcement of such a subpoena.

The Court finds that neither paragraph seemingly contemplates intervention by a civil plaintiff seeking criminal discovery. Furthermore, though ¶ 20 recognizes that a defendant might be subpoenaed, it requires defense counsel to inform the Government only if counsel is considering disseminating documents. Here, Defendant does not wish to disseminate documents. (ECF No. 2156.)

Finally, Brown's argument regarding plenary authority relies on Federal Rules of Civil Procedure 45(a)(1)(A)(iii), 45(d)(3)(A)(iii). Yet, as Brown concedes, this is a criminal proceeding, and the Federal Rules of Civil Procedure do not apply. Brown has provided no authority that the Rules of Civil Procedure would trump the Rules of Criminal Procedure in this context.

Based on the foregoing, the Court concludes that Brown has offered no basis for intervention in this criminal proceeding in order to obtain criminal discovery. For this reason alone, the Court will deny the motion for discovery.

/ / /

**B. Brown Has Shown No Good Cause to Modify the Protective Order**

Even assuming Brown did have a right to intervene (he does not), the Court finds that in any event, Brown has not demonstrated good cause for modification of the protective orders.

Here, Brown relies on something he calls the "Brittaker balancing" test. (ECF No. 2165, p. 6.) Yet, for this test, Brown directs the Court to a concurrence in judgement by Judges O'Scannlain and Rawlinson in Bittaker v. Woodford, 331 F.3d 715 (9th Cir. 2003) (en banc). The question before the majority in Bittaker was regarding the scope of a habeas petitioner's waiver of the attorney-client privilege when bringing an ineffective assistance of counsel claim: "Does [the waiver] extend only to litigation of the federal habeas petition, or is the attorney-client privilege waived for all time and all purposes—including the possible retrial of the petitioner, should he succeed in setting aside his original conviction or sentence?" Id. at 717. The majority affirmed the district court's determination to enter a protective order "precluding use of the privileged materials for any purpose other than litigating the federal habeas petition, and barring the Attorney General from turning them over to any other persons or offices, including, in particular, law enforcement or prosecutorial agencies." Id.

In concurring in judgment, Judges O'Scannlain and Rawlinson opined that "[b]ecause habeas is a civil proceeding, the permissible discovery is broader and the free exchange of such discovery creates a situation ripe for abuse: by bringing a habeas petition to exercise his constitutional right, the petitioner must give his entire case to the State, and, if petitioner is found to be unconstitutionally confined, the prosecutor may then use that same discovery to reconvict him." Id. at 734 (O'Scannlain and Rawlinson, JJ., concurring in judgment). In their view, "[t]he district court can minimize such harm by forcing the parties to start the adversarial process over again, and to proceed through discovery using the processes of the new forum in a subsequent case. If we properly construed the protective order, we would not have to discuss the attorney-client privilege, speculate about waivers, or strong arm the state into following a limited waiver of state law attorney-client privilege; we could simply hold that the district court did not abuse its discretion in limiting the dissemination of discovery materials." Id. at 735.

But Brown does not even rely on the reasoning from Judges O'Scannlain and Rawlinson.

Rather, Brown cites to parenthetical quotation from a case the concurrence relied on from the Fifth Circuit, Campbell v. Eastland, 307 F.2d 478, 487 (5th Cir. 1962). "A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal suit. Judicial discretion and procedural flexibility should be utilized to harmonize the conflicting rules and to prevent the rules and policies applicable to one suit from doing violence to those pertaining to the other." Id. at 734-35, quoting Campbell, 307 F.2d at 487.

Thus, Brown's use of Ninth Circuit precedent appears attenuated both in substance and in precedential value. The Court does not find Brown's suggestion of using a novel test from the concurrence of Bittaker, to be controlling or even helpful.

In contrast, the Court is persuaded by the Government's position. As the Government observes, the Court has broad authority issue protective orders and otherwise "restrict" and craft "appropriate" rules for handling discovery in criminal cases. Fed. R. Crim. P. 16(d)(1); see also Seattle Times Co., 467 U.S. at 36 (recognizing that restrictions on the handling of discovery productions are not subject to "heightened First Amendment scrutiny"). Typically, the party seeking a protective order must show good cause for the protections it seeks. See United States v. Dawson, 2026 WL 1826483, at *3 (D. Haw. June 24, 2026). With this authority, the Court also has the power to modify its own protective orders. See Empire Blue Cross & Blue Shield v. Janet Greeson's A Place for Us, Inc., 62 F.3d 1217, 1219 (9th Cir. 1995). It follows that good cause must also be shown to request that the Court modify a protective order. Denman v. City of Tracy, No. 2:11-cv-00310-GEB-JFM, 2012 WL 5349496, at *2 (E.D. Cal. Oct. 26, 2012), citing Murata Mfg. Co., Ltd. v. Bel Fuse, Inc., 234 F.R.D. 175, 179 (N.D. Ill. 2006) ("It should be no surprise that, there having been good cause to enter the protective order in the first place, there must be good cause shown before it can be vacated"). The party seeking to modify the protective order bears the burden of showing good cause for that modification. Id.; see also United States v. Bendawald, No. 1:23-cr-00281-DCN, 2025 WL 711725, at *3 (D. Idaho Mar. 4, 2025) ("The movant bears the burden of establishing 'good cause' for the requested protective

order.").

The CDCR discovery in this case in particular is fraught with safety issues, and for that reason it is subject to the "official information" privilege limiting disclosure. "'Federal common law recognizes' that state agencies may assert the 'official information' privilege to prevent disclosure of its confidential records." (ECF No. 1702 at 4, citing Sanchez v. City of Santa Ana, 936 F.2d 1027, 1033-34 (9th Cir. 1991); Kerr v. United States Dist. Ct. for N.D. Cal., 511 F.2d 192, 198 (9th Cir. 1975); Kelly v. City of San Jose, 114 F.R.D. 653, 670 (N.D. Cal. 1987); see also ECF No. 1783.) Under this doctrine, if a state agency invokes the privilege, "courts must weigh the potential benefits of disclosure against the potential disadvantages." Sanchez, 936 F.2d at 1033-34. "If the latter is greater, the privilege bars discovery." Id. at 1034. A state agency may invoke the privilege for individual documents or for a "class of documents." Kerr, 511 F.2d at 198.

The November 14, 2024 protective order in particular recognizes the extreme safety concerns attached to the information in CDCR records, especially as they relate to investigation of violence within prisons. (See ECF No. 1389.) In contrast, Brown does not really contend with that his demand for "documents related to the murder of Hugo Pinell, such as witness statements, incident reports, or other items reflecting the participants in the transaction," demands highly confidential material that could in fact jeopardize the safety of inmates, prison staff, and third parties as well as institutional safety and security. (See ECF No. 2148-1, p. 7; ECF No. 2165, p. 9.)

As noted in CDCR's motion to quash, confidential records related to the Aryan Brotherhood are "highly sensitive." (ECF No. 1702, p. 4.) This is especially so when the documents contain the identity of confidential informants (as witnesses to prison violence usually are), prison gang members and suspected prison gang members, and victims of in-prison violence. (See id.) Wider disclosure of these documents "would compromise CDCR's ability to maintain the confidentiality of the inmates named in the reports as well as the safety and security of its correctional facilities." (Id.) CDCR also noted that "if the identity of a confidential informant were to be revealed, the informant would be considered a 'snitch,' and would likely be

assaulted and even killed for relating such information to correctional staff." (Id., citing Wolff v. McDonnell, 418 U.S. 539, 562 (1974) (noting inmates are "subject to the unwritten code that exhorts inmates not to inform on a fellow prisoner" and in prison, "[r]etaliation is much more than a theoretical possibility").) These dangers persist, even when informants are housed in protective custody. (Id. at p. 5.) If an informant is out of custody, his safety, and that of his family, may be in jeopardy as well. (Id.) Moreover, CDCR pointed out that the wider disclosure of confidential information would create a chilling effect on the willingness of inmates to come forward with information to CDCR staff. (Id.) If an inmate's identity and the information they share could be revealed by a subpoena in an unrelated case, that inmate would understandably fear providing information about criminal activity in the prisons completely. (Id.) This would deprive prison officials of the intelligence needed to detect, investigate, and prevent future violent crimes—such as imminent plots to commit murders and assaults in the prisons. (Id.)

The parties and the Court in this case have, for good reason, spent a significant amount of time constructing paths by which discovery can be produced to the defendants for the purpose of preparing their defenses at trial, while minimizing the jeopardy that might otherwise befall witnesses, informants, and staff within the prison system. The Court finds that allowing an unrelated third party, with no interest in the outcome of the instant criminal case to assert a right to this sensitive discovery represents a material change to the scope of disclosure that none of the parties to the protective orders envisioned. Disclosure beyond the existing parties, in the absence of any cognizable right to the information sought, would undermine the integrity of the protective orders. Indeed, if it were the case that a third party could seize documents produced to a criminal defendant in discovery using only a civil subpoena in an unrelated case, government entities would not be able to let discovery out of their immediate control. Brown has said only that the material it seeks from Defendant Weaver is "relevant" to its civil case, and states, in conclusory fashion, that "there is no real issue in terms of preserving security." Brown does not sincerely acknowledge these competing concerns, even in his reply.[4]

---

[4] Brown's characterization that CDCR has created a "fabulist story," as well as insinuating that CDCR is lying—without any evidence demonstrating otherwise—is not well-taken. (ECF No. 2165, p. 10.) Indeed, Brown concedes

Thus, even assuming Brown had a right to intervene in this criminal proceeding, the Court finds Brown had demonstrated no good cause to modify the protective orders. The Court has considered the parties remaining arguments and finds them either without merit or unnecessary to reach in light of the foregoing.

A final note. The Court set the August 5, 2026 hearing because it had serious questions regarding Brown's bases for intervention and argument seeking modification of the protective orders, as well as affording Defendant and the Government an opportunity to respond to argument and justifications raised in Brown's reply. However, because counsel for Brown failed to appear, the Court was forced to take this matter under submission and issue this order without the benefit of hearing from Brown. Therefore, in no small part to the fact that counsel for Brown failed to appear at the August 5, 2026 hearing, the Court has determined that denial of the motion with prejudice is appropriate.

**IV.**

**CONCLUSION AND ORDER**

In sum, Brown has not demonstrated a sufficient basis for intervention in this criminal proceeding. Even assuming Brown has a right to intervene (he does not), Brown has not demonstrated good cause to modify the subject protective orders.

Accordingly, the Court DENIES the Motion for Discovery WITH PREJUDICE. (ECF No. 2148.)

IT IS SO ORDERED.

Dated: **August 6, 2026**

STANLEY A. BOONE
United States Magistrate Judge

---

CDCR may be "l[ying] or not . . ." (Id.) Casting aspersions is not persuasive to the Court on the issue of whether Brown has provided good cause to modify the protective orders.